Thank you. Good morning, Your Honors. May it please the Court, Amy Hutchinson, on behalf of Petitioner. I'd like to reserve three minutes for rebuttal and I will manage my time accordingly. This case is about the application of proper legal standards and the agency's failure to do so in perhaps one of the most intimate settings our country's law provides for, withholding the removal and protection under the Convention Against Torture. The standard of proof for either of these forms of mandatory relief is already high. To demonstrate eligibility, Petitioner was required to show, by a preponderance of the evidence, not by compelling evidence, that it is more likely than not that he will suffer persecution on account of a protected ground or torture with the acquiescence of the Mexican government. Here, in denying Petitioner's applications, the agency focused almost exclusively on the 2013 Human Rights Report, while ignoring probative, potentially dispositive evidence, ignoring case law, and improperly concluding that the record did not compel the conclusion that Petitioner is more likely than not to be tortured if removed to Mexico. This is reversible error. The agency is required to consider the record as a whole, and according to its own binding precedent, may not give dispositive weight to certain evidence at the exclusion of all others. Further, by stating that Petitioner failed to, quote, agency is stating that no reasonable fact finder could conclude otherwise. That is, the agency added to an already heightened probability standard and required Petitioner to compel something that he only needed to show by a preponderance of the evidence. Notably, according to Black's Law Dictionary, the word compel means that there is only one possible resolution. That is the standard of review before this court, but not his burden of proof. When the agency applies the wrong burden of proof, the proper remedy is for this court to remand for the agency to reconsider the issue, applying the proper legal standard. But even if the court declines to remand on this issue alone, the agency's decision still cannot stand where the evidence does indeed compel a contrary conclusion. First, Petitioner testified that he was kidnapped and falsely imprisoned for three days by armed men, forced to work without pay for a dangerous cartel under threat of death and under constant supervision, forced to watch the persecution of his colleague, El Raton, and threatened with death when he escaped. Based on this evidence, the only reasonable conclusion is that Petitioner has suffered past persecution. Any other conclusion raises the bar beyond what this court requires. Does it make any difference who persecuted him? I'm sorry, can you say that again? Does it make any difference who may have persecuted him? So it does not. In this case, the issue is not who persecuted him. In the context of CAT or withholding over moving, it's was he persecuted, we'll start with withholding, on account of a protected ground. Notably, the nexus and the protected ground were both issues were both punded by the BIA in this case. They decided on other grounds. So those particular issues are not before the court. And then in terms of protection under the Convention Against Torture, it needs to be persecution or, excuse me, torture by someone either in the government or with the acquiescence of the government. What evidence is there that it was somebody in the government that had anything to do with him being forced to go with the drug smugglers across the border? Sure, sure. So one thing that's interesting in this case is that the Petitioner submitted three packets of country conditions evidence, two in 2015. Excuse me, can you slow down just a little bit? Yes, of course. Sorry. Petitioner submitted three packets of country conditions evidence, two in 2015, and one in 2017. The one in 2017 is particularly instructive because it indicates that between 2013 and 2017, the Mexican government's strategies, particularly the Kingpin strategy, had completely failed. Violence was rampant and only getting worse. 2017, or the most recent country conditions evidence that they submitted, showed that it was the worst year on record since the government started keeping records of violence in Mexico. What that goes to show is that whether or not the torture was at the hands of the government, which I think in this case it's fairly clear that it was not, it was by the cartel members, it's something that the government simply was unable to control, and that's the test for CAT. Okay, so I was most recently talking about the future persecution and how he testified extensively that he had suffered kidnapping over a period of time, forced labor. And really, despite all of that evidence, the agency concluded that Petitioner failed to demonstrate past persecution for two reasons. First, because he didn't suffer any physical harm, and second, because the threats alone don't constitute persecution as a matter of law. But that can't stand. First, the Ninth Circuit has never required someone to show that they were physically harmed. In fact, this court has specifically held that persecution does not hinge on physical suffering. Moreover, the Ninth Circuit has consistently held that death threats can constitute persecution. In this case, or I should say especially when combined with other forms of harm, and even alone. In this case, Petitioner escaped the cartel and was informed thereafter that there was an assassination order against him. This occurred after Petitioner had already been forcibly recruited by the cartel, held hostage for over four months, and witnessed the beating of a colleague. These were not mere threats. And therefore, the BIA citation to Lim versus INS for the proposition that threats standing alone constitute past persecution in only a small category of cases is simply implausible based on this record. Well, the IJ found that he was incredible. He didn't believe him. That's true. The judge did enter an adverse credibility. Without that disbelief, what is there left? Sure. So the IJ's decision was in two parts. First, the IJ said, well, I don't believe what your client says. And that is something that we have preserved throughout. However, that argument was not taken up by the BIA. Again, similar to the discussion of Nexus and PSG, the BIA declined to reach the issue of credibility. And so what happened is the IJ reached an alternate conclusion, assuming credibility. And that's what the BIA went off of. They also assumed credibility. And they concluded that it didn't establish torture. Correct. They concluded based on their independent review, the credibility analysis aside, that there was no torture. In doing so, however, they relied almost exclusively, again, on the 2013 Human Rights Report, which, interestingly enough, the IJ cited to say torture is prohibited in Mexico. What the IJ didn't acknowledge, however, is that in the very next paragraph of that 2013 Human Rights Report, it says that despite this prohibition against torture, there were 25 reports of torture and over 1,000 complaints of cruel or unusual, or I'm sorry, cruel or degrading treatment between January 1 and August 31, 2013 alone. And moreover, this If the fact that torture is prohibited in Mexico means that no one can get, it means that he's ineligible for CAT, then no one can get CAT in Mexico or in any other country for that reason that has laws on the books. This simply isn't the test and that decision can't stand. And on appeal, the BIA affirmed the IJ's conclusion, again, citing to the 2013 Human Rights Report, that the record establishes there is pervasive evidence of violence in Mexico, violence and crime, but does not establish that it is more likely than not that petition will be tortured. This statement is conclusory and not supported by the record. The BIA must provide an explanation showing that it heard, considered, and decided the issue before it. As this court held in Cole versus Holder, when there is any indication the BIA did not consider all of the evidence before it, a catch-all phrase does not suffice and the decision cannot stand. Such indications include misfitting the record and failing to mention highly prohibitive or potentially dispositive evidence, just as the BIA did here. This court must reverse and I'll reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. We'll hear from the government. Leo? Yes, your honors. Good morning and may it please the court. Attorney Salvatino F. General. The record does not compel a contrary conclusion here with regard to the agency's decision as it pertains to withholding of removal or deferral of removal under the Convention Against Torture. To speak quite clearly with regard to petitioner's argument, the burden is clear that in order for a petitioner to establish withholding of removal under the that his life or freedom would be threatened on account of a protected ground. Withholding of removal's clear probability standard is more stringent than the well-founded fear analysis as it pertains to asylum. And I think that's what's really a crux of the petitioner's argument here. Petitioner appears to be conflating the asylum standard with the withholding standard. As we know, in this particular case, this is a reinstatement of removal case under Immigration and Nationality Act, Section 241. And as a result, petitioner here is only eligible for withholding of removal or deferral of removal under the Convention Against Torture. And what is clear in a number of cases before this court is that this withholding of removal standard is clear probability. An alien must establish by a clear probability that he or she would be threatened upon return based upon a protected ground. And I think it's clear from the record, and if we look at the immigration judge's decision summarizing the withholding of removal standard, as well as the Board of Immigration Judges, the Board of Immigration Appeals decision, that it's clear from the record that the appropriate standard was applied. So now let us take this argument and move further. Does the record evidence before this court compel a contrary conclusion? We hear words from petitioner hostage and deprivation of pay and deprivation of life and threats and significant threats. But if we look at the record evidence as a whole, we have an individual whose own words mark his peril. During his reasonable fear interview, before an asylum officer, he is specifically questioned on whether or not he was harmed by the cartel. And he indicates no. Again, during question and answer session before the immigration judge, he has asked the question whether or not he's harmed by the cartel. And he says no. I think what we really have here is a self-serving alien with regard to seeking protection from the United States government after he failed to do such, after a number of times of entering and then being removed. But counsel, those might be reasons that the IJ's adverse credibility finding could be upheld if the board had adopted it. But the board didn't rely. I mean, the board assumed him to be credible. And they didn't question particular social group or the Naxos, although there might be grounds to question both of those. All we have to review is the board's determination that what he suffered accepting his testimony doesn't amount to persecution. And I wonder if you could address, I mean, what are we to make of the fact that the board, in its analysis of past persecution, didn't mention at all the fact that he had been kidnapped for three days, and also doesn't seem to have thought about the cumulative effect of the kidnapping plus the threats, plus the other things that happened in its analysis. Well, I think the answer to your question is twofold. But I do want to talk a little bit about Judge Van Dyke's concurrence in the Velazquez decision with regard to adverse credibility determinations. And we'll get there in one moment, I think, since it's been brought up. But specifically with regard here, with regard to the board's adoption of the immigration judge's determination, I think it's pretty clear that the board here adopts the immigration judge's immigration judge's decision at 9, as well as at 9-10, as well as at 9 again, with regard to those experiences. So as I read, again, this court is inclined, when there's an affirmance of the immigration judge's decision, to not only just read the board's decision in a vacuum, it is to read the board's decision in conjunction with the immigration judge's decision with respect to those issues that have been affirmed by the Board of Immigration Appeals. And when you marry those decisions together, it seems quite clear that the agency here considered all those factors as they relate to past persecution, including the kidnapping, including the allegations that he was forced to work and deprived of pay and such. So when those decisions are wedded together, as this court is inclined to do, or is required to under the standards of review here, when they're married together, we have an IG, we have a board's decision that is in a sense affirming the immigration judge's decision with respect to that past persecution, as well as clear probability findings. And when read together, you see a well-grounded decision for purposes of withholding of removal in the Convention against Torture. And so what would you, I mean, I'm looking at page three of the record, page two of the board decision. What would you point to in this that reflects, I mean, I take your argument to be that this is an implicit adoption of... Yes, Your Honor, exactly. I would see on the top of page three, administrative record three, page two of the board's decision, the quote, the citing to the immigration judge at nine. Again, second paragraph, beginning as noted, citing to the immigration judge at nine. What do you make of footnote one? Excuse me, Your Honor, I apologize, we broke up. Yeah. What do you make of footnote one where the BIA says it's declined to reach the adverse credibility finding? Oh, no, I agree. The adverse credibility finding in of itself is not before this court. I think that what I posited for this court, I think in light of sort of this back and forth of the adverse credibility decision, is that in this Velazquez decision, Judge Van Dyke of the Ninth Circuit, in his concurrence, talks about adverse credibility decisions when they are not affirmed or rejected by the board, when there's language of the assumption of credibility and whether or not that language still in and of itself taints the overall past persecution or clear probability finding here. I would only invite this court's attention to Velazquez, since the evidence, I will, It's a concurrence, not a majority. I understand, Your Honor, and I do, I do contend that the adverse credibility determination is not here, but since it was brought up in this court, this concurrence came up approximately two weeks ago, I thought it would be well-reasoned just to bring it up and discuss it somewhat in that regard. But as a general matter, is it the government's position that kidnapping doesn't constitute persecution? It is not in and of itself in a vacuum, it does not. And I think that that's what this court's decision in Glow says, case by case, in the aggregate. And I think if we view this particular case in the aggregate, the four subsequent months of working for the cartel, going back and forth with the cartel, again, assuming credibility, it doesn't rise to the level of persecution as this court has consistently found. Yes, threats in a vacuum may or may not be persecution. I mean, we are required to look at this case in the aggregate as Glow commands us to, which I am compelled to agree with in this particular case. I think if you agree, what the agency does here is views it all in the aggregate. Doesn't simply look at the three days, looks at it in the aggregate and says, based upon everything that we've seen here, the record evidence, it simply does not rise to the level of persecution. And then whether or not this court believes in this. Let me make sure I understand your position. The court's position is that kidnapping alone for a prolonged time doesn't constitute persecution. No, I don't think that was my position, is the kidnapping for the three days. I think that's really the sort of discussion here, whether or not it's kidnapping for that entire period of time for four months, or whether or not it's testified to, it's a three-day kidnapping. And I think the fact that it's happening on its face constitutes persecution. When looked at it, one circumstance in a vacuum, but based upon this record, back and forth, working for the cartel in this regard, that based upon the record evidence, it doesn't rise to the level of persecution as the facts were drawn out here with regard to petitioner's testimony before the immigration judge. And again, assumption of credibility, and I agree with that point with regard to the adverse credibility decision, is not before this court. But again, in the aggregate, it's what this rule commands us to do. And I just want to talk just a little bit, I know my time is running out here, with regard to the Convention Against Torture. The immigration judge does a great job in summarizing the evidence here with regard to the Mexico country conditions. And I think this court has consistently said that general violence in and of itself does not rise to the level of persecution. And there's no evidence whatsoever that petitioner was tortured by or with the acquiescence of a government official, including willful blindness. And I think that if we look and we really look firm at that country conditions evidence, it's clear on its face that everything gets power to combat these cartels. And it hasn't arrived to victory yet against the cartels and the cartel violence. But at the same time, it is doing everything in its power to do so. There's no evidence that there's acquiescence, including the concept of willful blindness. Thank you, thank you, your honor. And in some instances, I would just simply ask that the Thank you, your honors. I wanted to say one thing about the compelling standard that we mentioned. Compelling, again, according to Black's Law Dictionary means that there is only one possible solution. But that's not what he was required to show. He was required to show that a reasonable adjudicator would have to conclude that he was persecuted. And I think an example is illustrative given the facts here. So pre-1865 civil war, hundreds of thousands of slaves were forced to work for their captors in fears that they would be beaten or killed if they didn't follow orders. A common punishment was to watch another slave be beaten or killed. And the slaves knew that they could not escape without recapture. Is that persecution? And if it is, how is petitioner situation not the thing? Persecution. And as a final remark, as to the country conditions evidence and whether or not the agency properly considered all of it, I would argue that it's very clear that they didn't. They cherry pick and cite only to the 2013 Human Rights Report at the expense of all of the other contributions evidence. We have over 700 pages of a record here. And I just want to quote the Bringus Rodriguez versus Sessions decision, which I think is also very illustrative here. It says, Mexico is to be lauded for its efforts, but it is well recognized that a country's laws are not always reflective of actual country conditions. Thank you. Thank you. Thank you both for your arguments. The case just argued will be submitted for decision and we will proceed with the next case. Thanks again.
judges: Kelly, Thomas, Miller